IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF**<br><br>**All funds in Paypal Account XXXXXXXXXXXXXX5254, such account held in the name of Shadab Siddiqui;**<br><br>**All funds in Bank of America Account XXXXXXXX0815, such account held in the name of Rukshana A. Patel;**<br><br>**All funds in Bank of America Account XXXXXXXX7896, such account held in the names of Shadab A. Siddiqui and Ruskshana A. Patel; and**<br><br>**All funds in Bank of America Account XXXXXXXX4174, such account held in the name of Rukshana A. Patel.** | Case No. 3:20-mj-137 |

**AFFIDAVIT IN SUPPORT OF
APPLICATIONS FOR SEIZURE WARRANTS**

I, Special Agent Brittany M. Wright, with the United States Secret Service, Charlotte Field Office, being duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this Affidavit in support of Seizure Warrants for the following assets:

    a. All funds in Paypal Account XXXXXXXXXXXXXX5254, such account held in the name of "Shadab SIDDIQUI" (hereinafter "PAYPAL ACCOUNT");

    b. All funds in Bank of America Account XXXXXXXX0815, such account held in the name of "Rukshana A. PATEL" (hereinafter "BANK OF AMERCIA ACCOUNT 1");

    c. All funds in Bank of America Account XXXXXXXX7896, such account held in the name of "Shadab A. SIDDIQUI and Rukshana A. PATEL" (hereinafter "BANK OF AMERICA ACCOUNT 2"); and

    d. All funds in Bank of America Account XXXXXXXX4174, such account held in the name of "Rukshana A. PATEL" (hereinafter "BANK OF AMERICA ACCOUNT 3").

(hereinafter, collectively, "the Funds").

2. I am a Special Agent with the United States Secret Service and have been so employed since May 2019. I am therefore an "investigative or law enforcement officer" of the United States within the meaning of Title 18 United States Code, Section 2510(7). I am empowered by law to conduct investigations and to make arrests and seize assets for federal felony violations. I have been part of investigations involving bank fraud, wire fraud and identify fraud. Prior to becoming a Special Agent, I was a contracted Asset Forfeiture Data Analyst with the United States Attorney's Office for the Western District of Virginia and the Drug Enforcement Administration in Roanoke, Virginia.

3. This Affidavit is intended to show only that there is sufficient probable cause for the requested Warrants and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that the Funds in all of the accounts constitute or are derived from proceeds of one or more violations of 18 U.S.C. § 2314 (Interstate Transportation of Stolen Property) and 18 U.S.C. § 371 (Conspiracy to Commit Described Offenses). Further, your Affiant has probable cause that the Funds in the three Bank of America accounts constitute property involved in one or more violations of 18 U.S.C. § 1956 and 1957 (Money Laundering). Therefore, the Funds are subject to civil and criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of crime proceeds), 28 U.S.C. § 2461(c) (rendering criminal forfeiture available in any case in which civil forfeiture is also available), 18 U.S.C. § 981(a)(1)(A) (civil forfeiture of property involved in money laundering), 18 U.S.C. § 982(a)(1) (criminal forfeiture of property involved in money laundering), and 18 U.S.C. § 984 (civil forfeiture of fungible property); and seizure pursuant to 18 U.S.C. § 981(b) (civil seizure warrants) and 21 U.S.C. § 853(f) (criminal seizure warrants).

## PROBABLE CAUSE

### *Background of Siddiqui's eBay Scheme*

5. In January 2020, the Charlotte-Mecklenburg Police Department (CMPD) and United States Secret Service opened an investigation into Shadab SIDDIQUI, for a scheme in which SIDDIQUI buys brand new, in-box items such as vacuum cleaners, from individuals who stole the items from retail stores located in the Charlotte metropolitan area. As part of the scheme, SIDDIQUI then sells the stolen items at below-retail prices on his personal eBay account.

6. According to subpoenaed documents received by your Affiant from eBay, SIDDIQUI (named as "Shadab SIDDIQUI" in eBay documents) opened eBay store "sidd_2400," hereinafter "the EBAY STORE," on or about August 23, 2005. On or about October 31, 2017, the EBAY STORE'S physical address was changed to 2400 Maple Grove Lane, NW, Concord, North Carolina, hereinafter "the PREMISES"[1] by someone with access to the EBAY STORE account. The PREMISES is also listed as the shipping address for the EBAY STORE, and **shadab.siddiqui@gmail.com**, hereinafter "the EMAIL ACCOUNT," is the EBAY STORE's email address. Between approximately January 1, 2019, and March 9, 2020 (approximately fifteen months), approximately 1,500 items were listed in and subsequently sold for approximately $330,000.00. The overwhelming majority of those items had sales titles that included the word "new," and almost all of the items were shipped outside North Carolina. Approximately 75% of those items were listed for sale from SIDDIQUI'S home IP address at the PREMISES.[2] As of May 18, 2020, the EBAY STORE has approximately forty-nine (49) unique items listed for sale. All but two (2) items are described as "new," and the only used items are refrigerator shelves.

7. Your Affiant knows that items advertised on eBay's website must be listed by a person using an electronic device capable of connecting to the Internet. Therefore, when items were listed for sale in the EBAY STORE, someone must have connected an electronic device,

---

[1] The United State is simultaneously seeking a search warrant in the Middle District of North Carolina for the PREMISES.

[2] According to subpoenaed documents received by your Affiant from Charter Communications, IP address 75.178.132.20 was issued to "Shadab SIDDIQUI" at the PREMISES.

such as a smart mobile phone, a tablet, or computer, to the Internet using an IP address in order to list the item on eBay's website.

*Interview with Co-Conspirator*

8. On or about January 9, 2020, J.S. was interviewed by Charlotte-Mecklenburg Police Detectives in Charlotte, North Carolina after being arrested for being in possession of a stolen vehicle. J.S., a state-convicted felon for larceny, advised that J.S. used to sell stolen brand new-in-box items to "Tool King" (a Charlotte, North Carolina store that was the subject of a 2018 Interstate Transportation of Stolen Property investigation that resulted in the seizure of more than $1,000,000.00 in stolen new-in-box items in late 2018 by the Charlotte-Mecklenburg Police Department and United States Secret Service).

9. J.S. admitted to currently selling "most of my stuff [stolen new-in-box items] to" an Indian male that J.S. knows as "SIDD." J.S. advised that he first met "SIDD" after advertising for sale a new-in-box stolen item on an internet marketplace named "OfferUp." According to J.S., "SIDD" offered to purchase more items from J.S., and as a result of their initial meeting, J.S. admitted to continuing to steal new-in-box items from retail stores in Charlotte, North Carolina and specifically that he steals items that "sell the best." J.S. stated that "SIDD" does "not really order up [specific items] but just what resells; resells like on eBay." According to J.S., "SIDD" is always "by himself" and that before J.S. meets "SIDD," "SIDD" sends J.S. "a message on OfferUp or calls and says, 'I want a Dyson or something.'" J.S. also stated that J.S. is "not sure exactly where," but that J.S. "thinks he ["SIDD"] sells it [stolen new-in-box items]."

10. J.S. advised that J.S. believes that "SIDD" lives in Concord, North Carolina, and has met with "SIDD" in Concord, North Carolina and in southwest Charlotte, North Carolina on

numerous occasions, as many as "three days a week" to sell stolen items to "SIDD." J.S. claimed to never have been to "SIDD'S" house, but "SIDD" often wanted to meet J.S. in Concord, North Carolina, to purchase stolen items from J.S. J.S. advised that "SIDD" drives a gold-colored Camry and a grayish-colored minivan. J.S. admitted that J.S. usually sells brand new-in-box stolen items to "SIDD" for approximately one-third of the item's true retail price.

### *Surveillance of SIDDIQUI, the PREMISES, and the VEHICLE*

11. On or about March 11, 2020, another law enforcement officer drove by the PREMISES.[3] The two-car garage door was open, and the officer observed that the garage was almost completely filled with what appeared to be a large amount of retail store boxes, some of which were clearly observed to be DeWalt tool sets and Dyson vacuum cleaners.

12. On or about March 17, 2020, another law enforcement officer observed SIDDIQUI leave the PREMISES driving a 2008 silver Honda Odyssey, owned by SIDDIQUI, with North Carolina registration plate BBA9225, hereinafter "the VEHICLE,"[4] remove what appeared to be two new-in-box retail store packages from the VEHICLE, and carry those packages inside the UPS Store located at 8611 Concord Mills Boulevard, Concord, North Carolina (hereinafter "the UPS STORE").

---

[3] According to law enforcement searches of law enforcement databases, including the North Carolina Division of Motor Vehicles, SIDDIQUI resides at the PREMISES. This has been confirmed through multiple surveillances at the PREMISES by your Affiant and other law enforcement officers in which SIDDIQUI was observed exiting and entering the PREMISES. Also according to the NC DMV, Rukshana PATEL (hereinafter "PATEL") lives at the PREMISES. According to an internet-based home sales website, the PREMISES was last sold in approximately 2012; therefore, your Affiant believes that SIDDIQUI has lived at the PREMISES since 2012.

[4] According to the North Carolina Division of Motor Vehicles, SIDDIQUI owns the VEHICLE, which your Affiant and other law enforcement officers have observed parked in the driveway of the PREMISES on multiple dates.

13. On or about April 27, 2020, another law enforcement officer and your Affiant observed SIDDIQUI leave the PREMISES driving the VEHICLE and drive to the UPS STORE. SIDDIQIUI removed what appeared to be approximately twelve new-in-box retail store packages from the VEHICLE and carried those packages inside the UPS STORE. SIDDIQUI left the UPS STORE empty-handed and then drove the VEHICLE back to the PREMISES.

14. Approximately one hour later on the same day, SIDDIQUI left the PREMISES in the VEHICLE and drove to a Kohl's retail store parking lot located at 8875 Christenbury Parkway, Concord, North Carolina. Approximately several minutes after SIDDIQUI parked in the parking lot, a silver Volkswagen sedan driven by an individual later identified as J.S. parked next to the VEHICLE. SIDDIQUI opened the rear door of the VEHICLE and J.S. removed two SoClean 2 Automated CPAP Equipment Sanitizer Machines, hereinafter "the CLEANING MACHINES," both of which were in retail store packages, from the Volkswagen and placed the CLEANING MACHINES inside the VEHICLE. SIDDIQUI handed what appeared to be cash to J.S. who then counted the cash. J.S. immediately left the parking lot, and SIDDIQUI drove the VEHICLE back to the PREMISES. The transaction between J.S. and SIDDIQUI occurred within approximately one minute, and it appeared that J.S. and SIDDIQUI had at least met once before because there was almost no verbal communication between them during the transaction. When SIDDIQUI returned to the PREMISES, another law enforcement officer observed the contents of the PREMISES' garage when the garage door was open, and it appeared that the garage contained numerous new-in-box retail store packages similarly as observed on several previous dates.

15. Later on the same date, the EBAY STORE'S pre-existing advertisement for CLEANING MACHINES was changed by a person with access to the EBAY STORE. Your Affiant believes that the change made by the person with access to the EBAY STORE was to

increase the quantity of CLEANING MACHINES available for sale as a result of SIDDIQUI purchasing two CLEANING MACHINES from J.S. earlier on this date.

16. On or about May 3, 2020, the EBAY STORE sold several CLEANING MACHINES for approximately $265.00 with free shipping. An internet search revealed the retail price of new CLEANING MACHINES to be between approximately $298.00 and $348.00. This indicates to your Affiant that the EBAY STORE netted approximately $210.00 for each CLEANING MACHINE after PayPal fees, eBay fees, and the cost of shipping were deducted from the sales price of the CLEANING MACHINES in the EBAY STORE.

17. On or about May 21, 2020, another law enforcement officer observed the VEHICLE parked in the PREMISES' driveway.

18. Retail store investigators at Target, The Home Depot, and Lowes provided your Affiant with retail and wholesale prices of items that are exclusively sold by their respective stores that were sold between approximately December 2019 and March 2020 by the EBAY STORE. Your Affiant compared the EBAY STORE's sales price and the EBAY STORE's net proceeds[5] of each item to the retail and wholesale price of exclusive items[6] sold by the retail stores. With very few exceptions, the EBAY STORE's sales price was between the retail and wholesale price of items, and the EBAY STORE's net proceeds of individual items was below or slightly above each item's wholesale price. Your Affiant knows that Target, The Home Depot, and Lowes are major

---

[5] To summarize how eBay and Paypal are used, when a seller sells an item through eBay and receives payment via Paypal, the seller nets approximately 87% of the sales price of the item because the seller pays eBay a 10% fee and pays Paypal a 3% fee.

[6] Many retail stores sell items that are "exclusive items," which means that only certain brands or certain models of products are available for purchase at particular retail stores. For instance, the brand "Dewalt" manufactures tools that are exclusively distributed to The Home Depot for retail sale to customers.

retail stores in the United States whose respective wholesale purchase prices for items sold exclusively in their stores would be essentially impossible to profitably match through legal means. Therefore, there is probable cause to believe that the only way that the EBAY STORE's net proceeds of items could be comparable to the wholesale price of major U.S. retail stores is for the EBAY STORE's owner to purchase these items from persons who steal or fraudulently obtain the items and sell the stolen items at a severe drastic discount to the EBAY STORE's owner.

*Paypal and Bank of America Accounts*

19. During the course of the investigation, your Affiant became aware of the PAYPAL ACCOUNT, BANK OF AMERICA ACCOUNT 1, BANK OF AMERICA ACCOUNT 2, and BANK OF AMERICA ACCOUNT 3. As set forth more fully below, the conspirators use the PAYPAL ACCOUNT to receive proceeds from the sales of stolen items. Then, the conspirators transfer those proceeds from the PAYPAL ACCOUNT to BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2. Finally, the conspirators either withdraw the proceeds from BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2, or transfer the proceeds from those two accounts to BANK OF AMERICA ACCOUNT 3.

20. According to subpoenaed documents received by your Affiant from Paypal, in or about August 2005, SIDDIQUI (named as "Shadab SIDDIQUI" in Paypal documents) opened the PAYPAL ACCOUNT. The email address for the PAYPAL ACCOUNT is the EMAIL ACCOUNT and the physical address for the PAYPAL ACCOUNT is the PREMISES.

21. According to subpoenaed information your Affiant received from Bank of America, BANK OF AMERICA ACCOUNT 1 is held in the name of "Rukshana A. PATEL,"

and monthly bank statements are mailed to the PREMISES. BANK OF AMERICA ACCOUNT 2 is held in the names of "Shadab A. SIDDIQUI" and "Rukshana A. PATEL," and monthly bank statements are mailed to the PREMISES. BANK OF AMERICA ACCOUNT 3 is held in the name of "Rukshana A. PATEL," and monthly bank statements are mailed to the PREMISES.

22. The PAYPAL ACCOUNT is linked to BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2, which your Affiant knows allows SIDDIQUI, or anyone with access to the PAYPAL ACCOUNT, to transfer funds among the PAYPAL ACCOUNT, BANK OF AMERICA ACCOUNT 1, and BANK OF AMERICA ACCOUNT 2.

### *Funding of the Accounts*

23. Between approximately October 2017 and March 2020, the PAYPAL ACCOUNT received approximately 1,500 individual payments totaling approximately $330,000.00. The majority of the payments totaling approximately $330,000.00 were from persons whose addresses are not in North Carolina and who bought items from the EBAY STORE. Between approximately October 2017 and March 2020, approximately $280,000.00 was transferred from the PAYPAL ACCOUNT to BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2.[7] Further, during roughly this same time period, cash was withdrawn from BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2. Your Affiant knows

---

[7] As to other sources of funding in the accounts, although SIDDIQUI appears to be employed by a legitimate business, it does not appear that SIDDIQUI has received deposits of income from his apparent legitimate employer in BANK OF AMERICA ACCOUNT 1, BANK OF AMERICA ACCOUNT 2 or BANK OF AMERICA ACCOUNT 3. However, PATEL is also legitimately employed and, between approximately September 2019 and December 2019, PATEL received an average monthly income from her apparent legitimate employer of approximately $1,400.00 deposited into BANK OF AMERICA ACCOUNT 1. Nonetheless, according to BANK OF AMERICA ACCOUNT 1 statements, Patel has not received any monthly income from her employer since December 2019.

based on her training and experience that "fences" (individuals who buy and sell stolen property) often use cash to purchase such property from "boosters" (individual who steal property for fences to sell). As of March 2020, the balance in the PAYPAL ACCOUNT was approximately $2,848.75.

24. As to BANK OF AMERICA ACCOUNT 1 specifically, beginning in or about March 2019 and continuing at least through April 2020, funds from the PAYPAL ACCOUNT were deposited into BANK OF AMERICA ACCOUNT 1 in monthly aggregate amounts ranging between approximately $9,000.00 and $35,000.00. Beginning in or about March 2019 and continuing through April 2020, cash was withdrawn from Automated Teller Machines (ATMs) in Concord, North Carolina, near the PREMISES. The withdrawals were drawn on BANK OF AMERICA ACCOUNT 1 in monthly aggregate amounts ranging between approximately $1,200.00 and $4,000.00. As of late March 2020, there was a balance of approximately $7,800.00 in BANK OF AMERICA ACCOUNT 1.

25. As to BANK OF AMERICA ACCOUNT 2, beginning in or about March 2019 and continuing at least through December 2019, funds from the PAYPAL ACCOUNT were deposited into BANK OF AMERICA ACCOUNT 2 in monthly aggregate amounts ranging between approximately $2,000.00 and $15,000.00. Beginning in or about March 2019 and continuing through December 2019, cash was withdrawn from ATMs in Concord, North Carolina near the PREMISES from BANK OF AMERICA ACCOUNT 2 in monthly aggregate amounts ranging between approximately $2,000.00 and $7,000.00. On or about January 17, 2020, approximately $3,000.00 was withdrawn from BANK OF AMERICA ACCOUNT 2 and on or about January 22, 2020, approximately $8,000.00 was deposited from the PAYPAL

ACCOUNT into BANK OF AMERICA ACCOUNT 2. As of late March 2020, there was a balance of approximately $4,500.00 in BANK OF AMERICA ACCOUNT 2.

26. As to BANK OF AMERICA ACCOUNT 3, beginning in or about June 2019 and continuing through April 2020, BANK OF AMERICA ACCOUNT 3 received deposits from BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2 in monthly aggregate amounts ranging between approximately $2,000.00 and $35,000.00. During this same time period, there were very few transactions other than deposits from BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2 into BANK OF AMERICA ACCOUNT 3. Based on this pattern of conduct, one or more conspirators appear to use BANK OF AMERICA ACCOUNT 3 as a repository account into which funds from BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2 are deposited. In total, BANK OF AMERICA ACCOUNT 3 received approximately $210,000.00 from BANK OF AMERICA ACCOUNT 1 and BANK OF AMERICA ACCOUNT 2 between approximately June 2019 and April 2020. As of April 2020, there was a balance of approximately $180,000.00 in BANK OF AMERICA ACCOUNT 3.

## **CONCLUSION**

27. Based on the foregoing, your Affiant submits that there is probable cause to believe that Funds in the PAYPAL ACCOUNT, BANK OF AMERICA ACCOUNT 1, BANK OF AMERICA ACCOUNT 2, and BANK OF AMERICA ACCOUNT 3 constitute or are derived from proceeds of the fraud and/or property involved in money laundering and illegal monetary transactions.

28. Further, based on your Affiant's training and experience, your Affiant knows that funds in financial accounts are easily moveable, and restraining orders are not sufficient to secure funds in financial accounts. Therefore, the issuance of Seizure Warrants is appropriate to secure the funds in the PAYPAL ACCOUNT, BANK OF AMERICA ACCOUNT 1, BANK OF AMERICA ACCOUNT 2, and BANK OF AMERICA ACCOUNT 3 for forfeiture.

Respectfully submitted,

_____
Brittany M. Wright
Special Agent
United States Secret Service

Subscribed and sworn to before me
on May 26, 2020:

_____
HON. DAVID S. CAYER
UNITED STATES MAGISTRATE JUDGE

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 26th day of May, 2020, at 2:02 PM

Signed: May 26, 2020

_____
David S. Cayer
United States Magistrate Judge